# STATE OF CONNECTICUT *v.* KATHY RIVERA
## (AC 18695)

Foti, Dranginis and Dupont, Js.

Argued November 27, 2000—officially released February 13, 2001

*Richard A. Reeve,* for the appellant (defendant).

*Robert M. Spector,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Kathy Rivera, appeals from the judgment of conviction, rendered after a jury trial, of two counts of conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48[1] and 53a-92 (a) (1) (A).[2] The defendant claims that the prosecutor made certain improper comments during his closing arguments to the jury that deprived her of her constitutional right to a fair trial. We disagree with the defendant's claims and affirm the judgment of the trial court.

From the evidence presented at trial, the jury reasonably could have found the following facts. The defendant and the victim, Quintina Texidor, knew one another in high school and socialized. Sometime after midday on February 25, 1997, the victim, her two year old daughter and the defendant were at the victim's house in Hartford watching television. At the defendant's suggestion, the victim and her daughter accompa-

[1] General Statutes § 53a-48 (a) provides in relevant part: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and: (1) His intent is to compel a third person (A) to pay or deliver money or property as ransom . . . ."

nied the defendant to her home in West Hartford. The defendant drove them to her house in her Cadillac automobile.

Upon entering the defendant's house, the defendant grabbed the victim's daughter from the victim's arms and took her somewhere upstairs in the house. Two men came into the first floor from the basement of the house. The victim later identified the men, both of Jamaican descent, as "Patrick" and "Dred." Patrick grabbed the victim by the neck and told her that she had something that belonged to him. The men took her to the living room and repeatedly told her that she had a package containing fifteen pounds of marijuana that belonged to them. The victim denied having the package.

At that point, the defendant left the victim's daughter upstairs and came to the living room. The defendant called the victim's boyfriend, Ismael Sanchez, told him that she had his daughter and his girlfriend, and said, "Please tell me you got eight Gs or I'm gonna let them take her to the Bronx and kill her, do whatever they want with her." The defendant's boyfriend, Carmelo Rivera, arrived at the house. He and the defendant argued in Spanish in the kitchen. The victim understood their argument and testified that Carmelo Rivera wanted the defendant to settle the dispute, but that the defendant wanted to proceed with the scheme and handle things her way. At one point, Carmelo Rivera called Sanchez and said, "It's not me. They want the money." The defendant grabbed the telephone from Carmelo Rivera and told Sanchez, "Yo, just get the money. Yo, you got a daughter. I keep telling you they gonna take her. You ain't never gonna see them again."

Patrick and Dred later led the victim into a car outside the defendant's house. The victim's daughter remained, screaming and crying, with Carmelo Rivera at the defen-

dant's house. While Dred pointed a gun at the victim in the backseat of the car, Patrick drove and the defendant rode in the passenger seat of the car. The four individuals traveled around for several hours. The defendant smoked marijuana and laughed while in the car; she acted "like everything was a joke to her."

During the afternoon, the defendant repeatedly spoke with Sanchez by telephone and demanded money from him. Patrick eventually drove to a shopping center in Bloomfield and met with Carmelo Rivera. At that time, the defendant exited the car, got into Carmelo Rivera's car and drove away. Carmelo Rivera informed Patrick that the police were involved and that they should release the victim. The men took the victim to the Hartford train station and threatened to come after her if anything happened to the defendant or to Carmelo Rivera. The victim's daughter already had been returned to the victim's home.

Sanchez had reported the matter to the police shortly after the defendant called him and demanded money. The police first visited the defendant's home to investigate the dispute. The police did not find anyone connected to the incident at the defendant's home. After the victim returned home, she filed a formal written statement that led to the defendant's arrest and prosecution.

On appeal, the defendant claims that several portions of the prosecutor's closing arguments to the jury infringed on her right to a fair trial. Specifically, the defendant claims that the prosecutor improperly (1) attacked the ethics and conduct of defense counsel, (2) relied on evidence that had been admitted only against another defendant who no longer was on trial, (3) vouched for the credibility of the state's key witness, (4) expressed his belief that the defendant had lied during her testimony, (5) urged the jury to draw infer-

ences on the basis of impermissible speculation and prejudicial stereotypes, and (6) suggested to the jury that if it found the defendant not guilty, it would be "violat[ing] the law."[3]

We will address each of the defendant's claims of impropriety in turn and set forth additional facts as they become necessary in the context of her claims.

## I

During his rebuttal argument to the jury at the conclusion of the trial, the prosecutor responded to defense counsel's closing argument to the jury. The prosecutor noted that defense counsel's comments concerning the innocence of the defendant or the credibility of witnesses constituted "unprofessional conduct and it so states in the rules of practice."[4] After the prosecutor concluded his argument, the court dismissed the jury for the weekend. After the jury's departure, defense counsel made an oral motion for a mistrial. Defense counsel's motion rested solely on his objection to the prosecutor's comment that he had violated the Rules of Professional Conduct in his closing argument. Following a brief hearing on the issue, the court denied the defendant's motion, noting that the comment did

---

[3] The defendant in her brief also claimed that the prosecutor based certain portions of his closing argument on facts not in evidence. The defendant withdrew that claim during oral argument to this court.

[4] The following excerpt from the prosecutor's argument provides greater context for those remarks: "First off, I was somewhat—not totally amazed, but somewhat amazed at some of the remarks made by counsel in his closing argument to you. First off, I don't want it to boil into a vendetta between the two of us because I'm not going to play that game—I've been doing this too long—but what I will say is this. I heard on numerous occasions [defense counsel] give you his opinions about the guilt or the not guilt or innocence of his client and also [the] credibility of witnesses. That is unprofessional conduct and it so states in the rules of practice. No opinion in this court amounts to one hill of beans except yours: [N]ot mine; not his. You will note [that] the court will never give you its opinion about the facts in the case. That's solely within your jurisdiction."

not "reach the severity level that would require a mistrial . . . ." On the next day of trial, a Monday, the defendant, out of the jury's presence, renewed her motion for a mistrial, reiterating that the prosecutor had directed the comments at defense counsel for the sole purpose of convicting the defendant. The court permitted defense counsel to file a written motion for a mistrial and additional requests to charge the jury that included an instruction concerning the comments the prosecutor made about defense counsel to the jury.

The court again denied the defendant's motion for a mistrial. The court indicated to counsel that it would provide a curative instruction to the jury and discussed with counsel the substance of the court's proposed curative instruction. The court also considered defense counsel's comments regarding its curative instruction. When the jury entered the courtroom, the court instructed it to disregard that portion of the state's rebuttal argument that alleged unprofessional conduct by defense counsel.[5] At a later point in the charge, the court again instructed the jury that the arguments of the attorneys did not constitute evidence in the trial. At the conclusion of the court's instructions to the jury, defense counsel did not take exception to any of those relevant portions of the court's charge. The defendant now claims that although the court denied her motion for a mistrial, the court's curative instruction did not cure the prejudice the prosecutor's rebuttal argument caused and that the argument deprived her of her right to a fair trial. We will review this claim because the defendant at trial raised the need for a mistrial and

---

[5] The relevant portion of the court's charge was as follows: "During the second argument of the prosecutor on Friday afternoon, references were made to—claimed unprofessional conduct on the part of defense counsel. That was not a proper argument to make. And so you should completely disregard that portion of the rebuttal argument by the state and not consider it in any way in your deliberations in this case."

adequately preserved for review her claim that the court improperly refused to grant her motion for a mistrial.

"When presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates. [A] prosecutor is not an ordinary advocate. His [or her] duty is to see that justice is done and to refrain from improper methods calculated to produce prejudice and wrongful decisions by the jury. . . . [B]y reason of his [or her] office, [a prosecutor] usually exercises great influence upon jurors. His [or her] conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because [a prosecutor] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 336, 746 A.2d 761 (2000).

"Prosecutorial misconduct may . . . occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . Id., 539–40." (Internal quotation marks omitted.) *State* v. *Heredia*, 253 Conn. 543, 561, 754 A.2d 114 (2000).

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. *State* v. *Oehman*, 212 Conn. 325, 336,

562 A.2d 493 (1989). *State* v. *Garrett*, 42 Conn. App. 507, 515–16, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996). To make this determination, we must focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case. *State* v. *Williams*, 41 Conn. App. 180, 190, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996). *State* v. *Garrett*, supra, 516." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 172, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999).

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. . . . The trial court's ruling is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful. . . . [T]he trial court's determination that the prosecutor's remarks did not require a new trial must be afforded great weight." (Citation omitted; internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 353, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. . . . [T]he trial judge is the arbiter of the many circumstances which may arise during a trial . . . [and] [t]he trial court has a wide discretion in passing on motions for mistrial." (Citations omitted; internal quotation marks

omitted.) *State* v. *Festo*, 181 Conn. 254, 265, 435 A.2d 38 (1980).

Scrutiny of a challenged remark made during closing arguments to the jury, therefore, does not occur in a vacuum; an appellate court examines such remarks in light of the entire trial. In the present case, we cannot say that the defense counsel's argument did not invite, to some extent, the prosecutor's argument to the jury. Our review of the record reveals that defense counsel's arguments to the jury took a similarly personal tone and that the prosecutor properly objected to portions of the argument several times. Rather than referring to the "state's case," defense counsel addressed the prosecutor personally in his argument. At one point, he referred to the prosecutor, stating, "one other thing and then I'll be finished with [the prosecutor]—he'll have his chance to get back at me." Defense counsel at least implied several times in his argument that the prosecutor was trying to pull something over on the jury by putting a "spin" on the evidence in the case. The record also reveals that defense counsel interjected his opinions about the evidence by telling the jury that it would have a "very easy decision" in acquitting the defendant on the second count. The tone of defense counsel's closing argument lessened the "prejudicial impact" of the prosecutor's comment. See *State* v. *Falcone*, 191 Conn. 12, 23–24, 463 A.2d 558 (1983).

Although the prosecutor's comment was inappropriate, the comment was neither severe nor part of a recurring line of argument. We also must examine the prosecutor's remark in the context of his entire closing argument. Immediately preceding the comment, the prosecutor responded to the tone of defense counsel's argument by stating to the jury, "I don't want it to boil into a vendetta between the two of us because I'm not going to play that game . . . ." The prosecutor tempered any prejudice that he could have caused the

defendant by next remarking that "[n]o opinion in this court amounts to one hill of beans except yours: [N]ot mine; not [defense counsel's]." The argument also did not relate to a specific critical issue in the case.

Moreover, in light of the strength of the state's case, we cannot say that the prosecutor's remark improperly influenced the jury. Although the state's case rested to a large extent on the credibility of the victim's account, the state corroborated the victim's account by offering Sanchez's testimony that the defendant repeatedly called him on the telephone and demanded money.

The court determined that the prosecutor's remark did not to rise to the level of improper argument so as to require the granting of a motion for a mistrial. The court concluded that its instruction concerning the arguments of the attorneys would adequately remove any prejudice to the defendant caused by the comment. As we previously noted, that decision is afforded great weight. The court also gave a curative instruction at the earliest practicable time in the proceedings. The court's instruction reminded the jury of the prosecutor's argument about unprofessional conduct, informed the jury that the prosecutor's argument was not proper, and instructed the jury to "completely disregard that portion of the rebuttal argument by the state and not consider it in any way in your deliberations in this case."

The primacy of the instruction in the context of the court's charge, and its meaning "sufficiently and force-fully directed the jury's attention to its obligation not to consider that argument." *State* v. *Lasky*, 43 Conn. App. 619, 629, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997). The court later instructed the jury that it must base its decision on the evidence presented alone[6] and that the lawyers'

---

[6] The court charged in relevant part as follows: "The evidence from which you are to decide what the facts are consists of: (1) the sworn testimony of witnesses both on direct and cross-examination, regardless of who called the witness; and (2) the exhibits that have been received into evidence. In

arguments do not constitute evidence.[7] In the absence of an indication to the contrary, we presume that the jury followed the instructions given to it by the court. *State* v. *Mills*, 57 Conn. App. 202, 212, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000). After the court instructed the jury, "[d]efense counsel did not object or except to this charge or claim that it was inadequate to offset the prosecutor's remarks. We conclude that the prosecutor's remarks were not so prejudicial as to render the curative instruction ineffective." (Internal quotation marks omitted.) *State* v. *Boone*, 15 Conn. App. 34, 54, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988). Although the defendant preserved her claim regarding a mistrial, she waived any claim regarding the adequacy of the court's curative instruction. "In order [properly] to . . . preserve for appeal a claimed error in the trial court's charge to the jury, a party must take an exception when the charge is given that distinctly states the objection and the grounds therefor." *State* v. *Miller*, 186 Conn. 654, 657, 443 A.2d 906 (1982). Any challenge, at that point, to the adequacy of the curative instruction or that the court improperly instructed the jury on this issue was waived. See *State* v. *Clark*, 48 Conn. App. 812, 829, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998).

The defendant's reliance on *State* v. *Alexander*, 50 Conn. App. 242, 718 A.2d 66 (1998), rev'd in part, 254 Conn. 290, 755 A.2d 868 (2000), in support of her claim that improper comments during closing arguments

---

reaching your verdict, you should consider all the testimony and exhibits received into evidence. Certain things are not evidence, and you should not consider them in deciding what the facts are."

[7] The court instructed the jury in relevant part that "[t]he lawyers are not witnesses. What they have said in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls."

deprived her of a fair trial is misplaced. In *Alexander*, we held that certain comments by the prosecutor during closing arguments concerning the defendant's right to be present during trial, the prosecutor's personal opinions about the case, arguments about facts not in evidence, and appeals to the passion and emotions of the jury deprived the defendant of his right to a fair trial. In *Alexander*, however, we concluded that the defense counsel did not in any way invite the comments, the prosecutor frequently made inappropriate comments during his argument, the comments directly addressed a critical issue in the case, the state did not present a particularly strong case and, importantly, the court did not adopt curative instructions to alleviate the potential that the comments prejudiced the defendant.

In the present case, even if we were to consider, as the defendant suggests, the prosecutor's remark along with the defendant's other unpreserved claims of inappropriate comments by the prosecutor, we cannot say that in the context of the entire trial; see *State* v. *Rolli*, 53 Conn. App. 269, 279, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999); that the defendant met her burden of proving that the argument deprived her of a fair trial. The fact that all of the defendant's claims focus on allegedly prejudicial remarks made only during closing argument demonstrates that such comments were not a pervasive quality of the entire proceeding. See, e.g., *State* v. *Kenney*, 53 Conn. App. 305, 324–25, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999).

## II

The defendant next claims that the prosecutor, during his closing argument, improperly vouched for the victim's credibility and that this deprived her of a fair trial.[8]

---

[8] The context of the prosecutor's remark is as follows: "If the elements of the crime have been proved with credible evidence, and I respectfully submit to you, while it's subject to your review, that the testimony of Quintina is true, then this young lady is guilty of those crimes as charged. I can only

The defendant did not object to that statement during trial and seeks review of the remark pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[9] We review the claim because the record is adequate for review and the claim is of constitutional magnitude. We, however, do not find that the prosecutor's comments in this regard clearly deprived the defendant of a fundamental right.

It is well settled that "[a] prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses . . . ." (Internal quotation marks omitted.) *State* v. *Turner*, 252 Conn. 714, 726, 751 A.2d 372 (2000). "Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 366. "The prosecutor may, however, argue to the jury that the *evidence* and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses." (Emphasis in original; internal quotation marks omitted.) *State* v. *Sherman*, 38 Conn. App. 371,

---

ask this jury to do its best in finding truth. I don't care about anything else. And, quite frankly, neither do the people of this state."

[9] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

396, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

We are well aware that counsel is afforded "generous latitude" when arguing to the jury. (Internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 358. In the present case, the fact that the prosecutor couched his comment in terms more appropriately characterizing the jury's function of gauging credibility of witnesses lessens the comment's prejudicial impact. When read in its context, the prosecutor's statement lacked the characteristics of vouching. Rather, his argument conveyed the message that if the jury believes the victim then the state has proven the elements of the crimes. It seems somewhat obvious that the prosecutor would also implicitly argue that the jury should believe the victim. While we would expect more artful language choice and the absence of the personal pronoun "I," we cannot say that this argument suggested that the prosecutor either "personally guaranteed the witness' credibility" or that he "implied that he had knowledge of the witness' credibility outside the record." *State* v. *Hicks*, 56 Conn. App. 384, 392, 743 A.2d 640 (2000). We also conclude that the court's instruction to the jury that it had the task of finding facts in the case and judging credibility mitigates against a determination that the comment affected the fairness of the trial. See *State* v. *Smith*, 49 Conn. App. 252, 265, 714 A.2d 1243, cert. denied, 247 Conn. 914, 722 A.2d 809 (1998); *State* v. *Sherman*, supra, 38 Conn. App. 398. This also is not a case in which impermissible vouching recurred frequently during the trial. See *State* v. *Williams*, supra, 204 Conn. 541. For those reasons, the defendant has failed to establish that a constitutional violation clearly exists that deprived her of a fair trial.

## III

The defendant claims that the prosecutor, during his closing argument to the jury, resorted to "prejudicial

racial and class based stereotyping to urge the jury to draw an inference which was not supported by any evidence, namely that [the defendant] was 'in the drug business.' " The defendant argues that the prosecutor supported the argument by referring to her young age, the type of car she drove, where she lived, her marijuana use and her marriage to a "young Spanish man." The defendant seeks *Golding* review of her claim because she failed to preserve it by raising an objection during trial. We will review the claim because the record is adequate for review and the defendant alleges a deprivation of a constitutional right. Because, however, a constitutional violation does not clearly exist that deprived the defendant of a fair trial, we find no merit to her claim.

Juries are instructed to decide the facts of a dispute on the basis of the evidence in the record. To that end, a prosecutor must not divert a jury from its task by engaging in arguments that appeal to "the emotions, passions and prejudices of the jurors." (Internal quotation marks omitted.) *State* v. *Rolli*, supra, 53 Conn. App. 280.

The state conceded at oral argument that the prosecutor's argument was not appropriate in that regard. The comment, however, did not deprive the defendant of a fair trial. The failure to object to certain arguments at trial often is an indication that "counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized." (Internal quotation marks omitted.) *State* v. *Iovieno*, 14 Conn. App. 710, 724, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988). Counsel might make a tactical decision not to object to a marginally objectionable argument because he or she does not want to draw the jury's attention to it or because he or she wants to later refute that argument. The record reflects that defense counsel rebutted those arguments and the inferences that the

prosecutor sought to have the jury draw from them during his closing arguments. For example, defense counsel rhetorically asked why the state had failed to prove that the defendant's affluent lifestyle resulted from drug activity. The defense arguments to the jury also challenged the victim's credibility through an appeal to consider the victim as a Hispanic, drug-using, unmarried welfare recipient living in a housing project.

In contrast to both counsel's arguments to the jury, the court instructed the jury that it could draw whatever reasonable inferences from the evidence that it deemed proper. In any event, because the focus of the trial was on the defendant's actions during the afternoon of the victim's kidnapping rather than on her lifestyle, those arguments may have been irrelevant. Any arguments in that regard also did not represent a "blatant and egregious pattern of misconduct"; *State* v. *Daniels*, 42 Conn. App. 445, 460, 681 A.2d 337, cert. denied, 239 Conn. 928, 683 A.2d 397 (1996); that undermined the fairness of the trial. The prosecutor restricted those remarks to a minor portion of his closing argument, and we conclude, after reviewing the remarks in the context of the entire record, that they "did not rise to the level of egregious conduct that so infected the trial with unfairness that the defendant was denied [her] constitutional right to a fair trial." *State* v. *Rolli*, supra, 53 Conn. App. 280.

## IV

The defendant further claims that she did not receive a fair trial because the prosecutor, during his closing arguments, improperly relied on evidence that had been admitted only against another defendant who no longer was on trial, expressed his belief that the defendant had lied during her testimony at trial and suggested to the jury that finding the defendant not guilty would violate the law. We set forth each of the defendant's

claims separately. We will, however, discuss them together.

During his closing argument to the jury, the prosecutor referred to certain evidence concerning Carmelo Rivera's rental of the car used during the kidnapping. The court admitted that evidence solely against Carmelo Rivera, who was a defendant in the trial until the court granted his motion for a judgment of acquittal. Immediately following the prosecutor's reference to that testimony, defense counsel objected, and the court heard argument outside of the jury's presence. The court sustained the objection and instructed the jury that it must disregard such evidence in the case before it.[10] The court reiterated a similar instruction to the jury in its charge. Defense counsel failed to object to the court's instruction to the jury on that issue in either instance.

As we noted in part I of this opinion, the absence of an objection to the court's curative instruction often is an indication of the instruction's adequacy. In any event, the prosecutor referred to the evidence about the rental car only once, the jury already had learned about it when the representative from the car rental company testified, the evidence had only slight, if any, prejudicial effect on the defendant, and the court's immediate and direct curative instruction adequately removed the evidence from the jury's consideration. To the extent, therefore, that the defendant now challenges the ade-

---

[10] The court instructed the jury as follows: "Some evidence in this case came in only against Carmelo Rivera and not against [the defendant]. And, specifically, there was evidence from an official from Hertz Rent-a-Car, who testified about renting a car, and some documents and a photograph were put into evidence in connection with his testimony. That evidence only came in as to Carmelo Rivera and, therefore, should not be considered by you in the case that you're going to decide, which is state against [the defendant]. I was going to tell you that in my charge, and I will repeat it in the charge. So, references to that in this argument shouldn't be considered by you, either."

quacy of the court's curative instruction on that issue, the claim is unpreserved.

The defendant also claims that the prosecutor expressed his belief that the defendant lied during her testimony, under oath, during the trial. The defendant cites to only one instance of that alleged misconduct in the record. Specifically, she points out that the prosecutor argued to the jury that "[w]hen [the defendant] tells you or tells us [that] she does not know . . . what [Dred's] last name is when she's known him the way she knows him, I respectfully submit that it's not true." The defendant failed to object to that argument.

The defendant also claims that one of the prosecutor's arguments directly suggested to the jury that " 'the law' was on the state's side, that the defendant's arguments were somehow counter to or against the law and that a not guilty verdict could come only at the expense of the jurors violating the law." Again, the defendant failed to object to that perceived improper comment during trial.

The defendant seeks review of her claims under *State* v. *Golding*, supra, 213 Conn. 233. We previously have noted that we may dispose of claims under a *Golding* analysis by "focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Rolli*, supra, 53 Conn. App. 277–78. We are persuaded that the defendant's unpreserved claims are "merely masquerading" as constitutional claims and should be summarily dismissed. See *State* v. *Lasky*, supra, 43 Conn. App. 632. Nothing about those claims raises issues of due process. Our review of the entire transcript of the trial does not reveal a pattern of misconduct that compromised the fairness of the defendant's trial. "[W]here the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly

egregious that it infringed on the defendant's right to a fair trial, we have consistently held that the second prong of *Golding* has not been met." (Internal quotation marks omitted.) *State* v. *Lepri*, 56 Conn. App. 403, 416, 743 A.2d 626, cert. denied, 253 Conn. 902, 753 A.2d 938 (2000); see *State* v. *Rolli*, supra, 278; *State* v. *Moore*, 49 Conn. App. 13, 30, 713 A.2d 859 (1998).

We conclude that the defendant's claims do not rise to constitutional dimension, and therefore we decline to review them. See *State* v. *Alamo*, 57 Conn. App. 233, 236, 748 A.2d 316, cert. denied, 253 Conn. 912, 754 A.2d 161 (2000).

The judgment is affirmed.

In this opinion the other judges concurred.