STATE OF CONNECTICUT *v.* WILMANN JEUDIS
(AC 20621)

Schaller, Flynn and O'Connell, Js.

Argued February 23—officially released April 17, 2001

*James M. Fox*, for the appellant (defendant).

*John P. Gravalec-Pannone*, senior assistant state's attorney, with whom were *Paul J. Narducci*, assistant state's attorney, and, on the brief, *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70[1] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21.[2] On appeal,

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely

the defendant claims that (1) the trial court improperly denied his motion for a new trial and (2) the state's attorney engaged in prosecutorial misconduct. We affirm the judgment of the trial court.

## I

The following facts and procedural background are necessary for a resolution of the defendant's first claim. On December 16, 1997, the jury returned a guilty verdict on all counts. On December 22, 1997, new counsel filed an appearance, together with a motion for a new trial, in which he claimed that (1) "[t]he defendant's lack of comprehension of the proceeding denied him a fair trial," (2) "[t]he defendant was not provided with adequate translation services throughout the pretrial and trial proceedings" and (3) "[t]he defendant was not provided with an adequate individual interpreter when he met with counsel." The court denied the motion, and this appeal followed.

We begin our analysis by noting that "[t]here is persuasive authority that, under appropriate circumstances, a defendant's right to confrontation, his right to counsel and his right to be present at trial may be violated if he is not provided with a separate interpreter, who performs the functions of translating for him, into his language, the testimony of English speaking witnesses and interpreting between him and his English speaking counsel during the testimony of all witnesses, both English and non-English speaking. . . . A critical factual underpinning of these constitutional requirements, however, as disclosed by those authorities, is that the defendant has so limited an understanding or ability to speak English that his ability to comprehend the proceedings and to communicate with his counsel is significantly impaired. Thus, the basic constitutional

to impair the health or morals of any such child . . . shall be guilty of a class C felony."

inquiry is whether any inadequacy in the interpretation made the trial fundamentally unfair . . . and the failure to provide continuous, word-for-word translation will require a new trial only upon such a showing of fundamental unfairness." (Citations omitted; internal quotation marks omitted.) *State* v. *Munoz*, 233 Conn. 106, 133–34, 659 A.2d 683 (1995); *Rodriguez* v. *Commissioner of Correction*, 57 Conn. App. 550, 553–54, 749 A.2d 657 (2000).

The constitutional standard is whether the defendant can understand the witnesses, communicate and otherwise comprehend the proceedings. See *State* v. *Munoz*, supra, 233 Conn. 132–34. In the present case, there is ample evidence to establish that the defendant understood English and the court proceedings. The court found it significant that at no time prior to the filing of his motion for a new trial did the defendant indicate that he had a problem with the interpreter's ability or interpreting skills.

Only after the court conducted a thirteen day evidentiary hearing, at which twenty-five witnesses testified, did the court render its decision denying the motion for a new trial.[3] The state presented the testimony of nine police officers, two of the defendant's supervisors at work, two court interpreters, a bail commissioner, the defendant's English as a second language teacher and the defendant's trial counsel, all of whom addressed the defendant's ability to understand English. Each of these witnesses testified concerning the details of their contact with the defendant and stated that the defendant could speak and comprehend the English language.

Additionally, in its oral decision, the court stated: "The court has its own observations. During the trial

---

[3] Pursuant to Practice Book § 64-1, the court's oral decision was transcribed and signed by the judge.

. . . the defendant sat with his counsel and his interpreter. He sat next to his counsel and the interpreter was on the other side. In other words, he sat in the middle between his lawyer and the interpreter. The court observed the defendant talking with his lawyer throughout the trial and ignoring, or what had seemed to be—and not using the services of the interpreter while he communicated with his lawyer . . . ."

Except for the defendant's self-serving declaration, there was no evidence concerning the need for an interpreter when the defendant met with counsel. The court was entitled to believe counsel's testimony that he and the defendant had spoken several dozen times between the arraignment and trial and that all of those sessions involved discussions of substantive matters and were conducted in English. The record, therefore, does not support the defendant's claim that he was deprived of his right to a fair trial because of the lack of a proper interpreter when he met with his counsel.

We do not mean to imply that the defendant was left adrift in a sea of English with no assistance. He was furnished with an interpreter at trial. At the posttrial motion hearing, however, the defendant claimed that the interpreter was of little assistance because he and the interpreter spoke different Haitian Creole dialects. He contended that the interpreter spoke a dialect known in northern Haiti and that he spoke a dialect known in southern Haiti. The defendant attempted to support this contention through the testimony of a linguistic expert.[4] The court discredited this claim because, despite the expert's testimony, there was no evidence that there were any words or phrases that had different meanings in the northern and southern

---

[4] It is interesting to note that the defendant's expert, a linguistic professor from the University of Massachusetts, testified that the defendant was not "competent" in the Creole language. He was, however, "proficient" in it.

sections of Haiti. The court concluded that there was no evidence that dialect played a part in this issue. This is a factual finding that this court cannot overturn unless it is clearly erroneous. *Johnson* v. *de Toledo*, 61 Conn. App. 156, 160, 763 A.2d 28 (2000), cert. granted on other grounds, 255 Conn. 938, 767 A.2d 1212 (2001).

In view of all the evidence, we are not persuaded that the defendant sustained his burden of demonstrating that the trial was fundamentally unfair. See *State* v. *Munoz*, supra, 233 Conn. 106.

## II

The defendant next claims that the state's attorney engaged in prosecutorial misconduct during closing argument when he (1) vouched for the credibility of the testifying police officers, (2) inflamed the passions of the jury, (3) mischaracterized the expert's testimony and (4) offered his personal opinion. We do not agree.

Because the defendant failed to raise these issues at trial, he is entitled to a review of their merits only if he properly invokes the rule of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under the *Golding* doctrine, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in

original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 578–79, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000); *State* v. *Peterson*, 51 Conn. App. 645, 654, 725 A.2d 333, cert. denied, 248 Conn. 905, 731 A.2d 310 (1999).

In analyzing this claim, we do not focus solely on the prosecutor's conduct. "The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 61 Conn. App. 763, 769, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001). "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court] in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 202, 205–206, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000).

We review the defendant's claims because the record is adequate for review and the allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude. See *State* v. *Rivera*, supra,

61 Conn. App. 775. The record does not support the defendant's claim that he clearly was deprived of a fair trial, and, therefore, the claim fails under the third prong of *Golding*.

## A

The defendant first claims that during closing argument, the state's attorney improperly vouched for the police officers who had testified by stating: "Now, the police witnesses, Detective Wakerman—again, the police witnesses in this case are people who have done this over and over again. There were no rookies in this case. This wasn't their first case out of the box. They have done this a number of—a number of times. Again, use your common sense."

It is well settled that "[a] prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses . . . . The prosecutor may, however, argue to the jury that the *evidence* and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Rivera*, supra, 61 Conn. App. 775. It is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record. *State* v. *Hicks*, 56 Conn. App. 384, 392, 743 A.2d 640 (2000).

Here, the state's attorney did not vouch for the credibility of the witnesses. He merely addressed the witnesses' qualifications and the inferences the jury could draw therefrom.

## B

The defendant next claims that the state's attorney improperly inflamed the passions of the jury when he

stated: "And one other thing, I would like to submit for you to recall about [the victim's] testimony, I saw it and I would submit [that] you ladies and gentlemen saw it, do you recall the look in her eyes when I asked her to identify who [the defendant] was? You saw the look in her eyes. The state would submit this is the look of fear, the look of terror when she had to look at this defendant and point to him and say, 'He's the one that did this to me.' "

None of these comments were improper because the state's attorney was commenting on the demeanor of a witness whom the jury saw testify. The comments were in reference to evidence that was presented to the jury and the reasonable inferences that the jury could draw from it.

## C

The defendant also claims that the state's attorney mischaracterized the testimony of two expert witnesses when he stated: "And, again, I'm going to jump ahead for a minute but [Rose] Niedzwicki and [Kimberly] Herwerth, who have dealt with almost 2000 victims between them where people have complained about being the victims of sexual assault, say if it walks like a duck and talks like a duck, its got to be a duck because they say those are the exact things in general—that children in general who complain about this talk about."

The state's attorney's comments were directed toward the qualifications of two expert witnesses who testified as to the conduct of sexual assault victims. The testimony of the experts concerned the conduct of sexual assault victims in general and was not an opinion on the credibility of the victim in this case. On the basis of our review of the record, we conclude that these comments by the state were not improper.

## D

Finally, the defendant claims that the state's attorney improperly offered his personal opinion by stating the ultimate factual question as a predetermined fact. The defendant's claim arises from the comment of the state's attorney that the defendant sexually assaulted the victim. Viewed in the context of the state's entire argument, it is evident that the state first sought to establish the evidentiary foundation that could lead the jury to that conclusion. The prosecutor then highlighted the evidence presented and what reasonable conclusions could be made by the jury. We conclude that the state's attorney's remarks were not improper.

We conclude that the defendant has failed to establish that a constitutional violation clearly exists that deprived him of a fair trial, and, therefore, he has failed to satisfy the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.