STATE OF CONNECTICUT *v.* BRIAN MOORE
(AC 20364)

Mihalakos, Dranginis and Hennessy, Js.

Argued January 15—officially released April 9, 2002

*Leonard M. Crone,* for the appellant (defendant).

*Marjorie Allen Dauster,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence Mariani,* assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Brian Moore, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a), and two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (5). On appeal, the defendant claims that a new trial should be ordered because he was denied due process and a fair trial by a pattern of prosecutorial misconduct that pervaded the trial. In support of this claim, the defendant asserts that a mistrial should have been declared because the prosecutor improperly (1) disclosed prejudicial matters to the jury through his questioning of the defendant in violation of the trial court's ruling on a motion in limine and (2) introduced facts not in evidence during his closing argument to appeal to the passions of the jury. Although we agree with the defendant that some of the prosecutor's conduct was improper, we conclude that the misconduct was not so prejudicial as to clearly deprive him of a fair trial. We, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In early 1997, the defendant sold two bulletproof vests, or the components thereof, to the victim, Glaister

Gopie. Subsequently, the victim attempted, on many occasions, to return one of the vests for a refund. On the evening of May 18, 1997, the victim and his cousin, Andrew Mitchell, drove to Circular Avenue in Waterbury and parked on the street near a friend's home. The victim, coincidentally, parked directly outside the home of the defendant's half-sister, Crystal Bolton. Sometime earlier that day, the defendant and his girlfriend had driven to Circular Avenue to visit Bolton. As the defendant left Bolton's home and as the victim approached his friend's home, the two men encountered each other. The victim then confronted the defendant about the desired refund.

From that point, the confrontation escalated into a fistfight, in which the victim was the apparent victor. After the fight ended, the defendant retrieved a loaded .38 caliber revolver from his car. The defendant then shot at the victim twice. The victim ran, fell to the ground shortly thereafter and was found by police lying face down with a single gunshot wound in the middle of his lower back. The victim told an officer that the defendant had shot him. Subsequently, the police arrested the defendant.

Following a jury trial, the defendant was found guilty of two counts of assault in the first degree and one count of attempt to commit murder. As a result, he was sentenced to eighteen years for each count, to run concurrently, for a total effective sentence of eighteen years of incarceration. This appeal followed. Additional facts and procedural history will be provided as relevant.

Our standard of review concerning claims of prosecutorial misconduct is well settled. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a

denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . .

"In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 266–67, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

We also note that "[p]rosecutorial misconduct can occur in the course of closing argument." Id., 266. "[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . .

Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence." (Internal quotation marks omitted.) *State* v. *Conde*, 67 Conn. App. 474, 501, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002). Nevertheless, "in fulfilling his duties, the prosecutor must confine the arguments to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Internal quotation marks omitted.) Id. Heeding these principles, we are further mindful that "[i]n determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant." *State* v. *James*, 54 Conn. App. 26, 43–44, 734 A.2d 1012, cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999).

I

The defendant first claims that, in violation of a court order, the prosecutor prejudicially revealed to the jury that the defendant was a convicted felon. We disagree.

The following additional facts and procedural history are relevant to this issue. Before the trial commenced, the defendant filed several motions in limine, one of which sought to bar the state from offering evidence of the defendant's 1990 conviction of possession of narcotics. Regarding that motion, the court ruled that the state could mention only that "the defendant was convicted of an unspecified crime carrying a penalty of more than one year at a certain place and time . . . ." The court specified, however, that it would "not allow direct evidence or testimony of the fact that it was for a narcotics conviction nine and a half years ago." On October 19, 1999, the second day of the trial, the court

reiterated and clarified its ruling on the motion shortly before the defendant testified.[1]

On cross-examination, the prosecutor asked the defendant, "And you're a convicted felon, aren't you?" Upon hearing this question, defense counsel immediately objected, the jury was excused and defense counsel then made an oral motion for a mistrial. Defense counsel argued that the prosecutor's question blatantly ignored the court's ruling regarding the admissibility of the defendant's prior conviction by not conforming to the language specified by the court in its ruling. See footnote 1. The court overruled the objection and denied the motion for a mistrial. The court noted that the intent of the controlling case law and, therefore, the court's ruling was not meant to protect the defen-

---

[1] The trial transcript reveals the following relevant colloquy concerning the court's ruling on the motion in limine, which addressed the introduction into evidence of the defendant's prior conviction:

"[Defense Counsel]: The only . . . other thing, Judge, is I just want to revisit this so there's no mistake . . . on my part or by the state's attorney's part. As I read [*State* v. *Geyer*, 194 Conn. 1, 480 A.2d 489 (1984)] and as I understand the court's ruling on my motion in limine about the defendant's record, the only question that can be asked about that is, 'On [June 12, 1990,] in Waterbury, were you convicted of a crime that carried a penalty of one year or more?'

"The Court: That . . . does seem to be my recollection as to what I ruled. Do you agree, attorney Mariani [assistant state's attorney]?

"[Assistant State's Attorney]: As to that particular conviction. . . .

\* \* \*

"[Assistant State's Attorney]: Actually, I just want to make sure I understand the court's ruling [regarding the defendant's prior conviction]. I can't name that it's a narcotics conviction. I understand that. I can name the date, that it's a felony, and I can say, 'You were sentenced to jail for fifteen months for that?

"[Defense Counsel]: No.

"The Court: No. I think the ruling of the court, and I took the language from a decision, was that . . . the inquiry could be . . . 'Were you convicted of a crime for which the penalty was for more than one year' and the date and place of the conviction. That is what I see as my direction from precedent cases and that's what I would—

"[Assistant State's Attorney]: Okay. I understand.

"The Court:—restrict the inquiry to be. All right."

dant from the use of the term "felony" but was instead meant "to keep out narcotics rather than a felony." The court further stated: "Call it a conviction for more than one year; call it a felony, to me, it's consistent. I apologize to counsel for making it sound like a quote. I didn't intend to keep the concept of a felony out, just narcotics and that was the expressed prayer for relief . . . ." When the trial resumed, the prosecutor asked the defendant twice more whether he was a convicted felon, to which the defendant replied in the affirmative. Similarly, in his closing argument, the prosecutor referred to the defendant as a convicted felon four times.

In its initial ruling regarding the introduction of evidence of the conviction and in its later summation of that ruling, the court relied on *State* v. *Geyer*, 194 Conn. 1, 480 A.2d 489 (1984). In *Geyer*, the defendant sought, through a motion in limine, to keep his prior convictions out of evidence because they were highly prejudicial in light of the fact that he was on trial for a narcotics offense identical to one of his prior convictions. Id., 3–4. The trial court denied the motion in large part but noted that it would deal with the scope of the prosecutor's questions about certain convictions as they arose. Consequently, the defendant testified about his convictions during his direct testimony, and the prosecutor pursued them on cross-examination as well without alerting the court as he had promised. Id., 4–5. Our Supreme Court agreed with the defendant's claim that the trial court's ruling was improper and ordered a new trial. In doing so, our Supreme Court noted that "the prudent course for a trial court faced with a decision whether to admit as evidence of credibility prior convictions for crimes that do not directly reflect on credibility is to allow the state to mention that the defendant was convicted of an unspecified crime or crimes carrying a penalty of more than one year, at a certain time and place. The defendant's character, from

which the jury might draw an inference of dishonesty, would thus be sufficiently impugned without the extraordinary prejudice that sometimes follows when the prior crime is specifically named." Id., 16.

Although the prosecutor in the present case may have appeared initially to skirt the court's ruling on the defendant's motion in limine and the language used in *Geyer*, we conclude that the prosecutor's question regarding the defendant's prior conviction and his later references to it were not improper. We first note that the prosecutor did not specifically name the offense underlying the prior conviction, in accordance with the thrust of the court's ruling on the defendant's motion in limine. Although the court used the language in *Geyer* twice as the template that the prosecutor should have employed for his question, the court later explained that its ruling was meant only to prevent the prosecutor from identifying specifically the narcotics offense underlying the prior conviction. The ruling was not intended to shelter the defendant from the use of the term "felony." Further, the court adequately addressed any potential prejudice to the defendant through its instruction to the jury to use the prior conviction only to weigh the credibility of the defendant's testimony. See footnote 5.

Moreover, the defendant's stringent reliance on *Geyer* is misplaced. In *Geyer*, our Supreme Court did not rule that the use of the words "felony" or "felonies" was inappropriate when referring to a defendant's prior convictions for such offenses. In fact, our Supreme Court in *Geyer* agreed with the defendant's claim that the trial court "should have permitted the state to mention only that he had been convicted of unspecified *felonies* on those occasions." (Emphasis added.) *State v. Geyer*, supra, 194 Conn. 5. Additionally, in this case the defendant was not threatened by the same kind of prejudice as that overshadowing the defendant in

*Geyer*, who was on trial for the same offense as that underlying one of his prior convictions. Id., 14–15. Instead, the prosecutor here properly challenged the credibility of the defendant by questioning him about his prior conviction, although the prosecutor's question could have been phrased more prudently in light of the court's ruling and the language suggested in *Geyer*. We conclude, therefore, that this aspect of the defendant's claim of prosecutorial misconduct is unavailing.

## II

The defendant also asserts that the prosecutor improperly referred to facts not in evidence during his closing argument to appeal to the passions of the jury and, thereby, prejudiced the jury against the defendant. We agree that the prosecutor's comments were improper but conclude that the comments did not substantially prejudice the defendant.

The following additional facts and procedural history bear on this claim. First, in an apparent attempt to counteract defense counsel's closing argument concerning the victim's trustworthiness,[2] the prosecutor downplayed the victim's own arrest record in New York by calling it a "minor thing" that "certainly wasn't a felony." The court sustained defense counsel's objections to the prosecutor's statements on the ground that no evidence had been presented at trial concerning the nature of the charges related to the victim's arrest in New York.

Finally, the prosecutor referred to the actions of Bolton in the wake of the shooting. The prosecutor stated

[2] To demonstrate that the victim's testimony was not trustworthy, defense counsel asserted in his closing argument, among several other alleged discrepancies, that the victim lied about not having been in trouble with the law before he was arrested on certain unrelated charges in Connecticut, which were later nolled by the state. To that end, defense counsel discussed how it was shown during the trial that, in fact, the victim had a prior arrest record in New York.

during his closing argument: "Crystal Bolton held [the victim's] head as he was lying there bleeding. The defendant's sister, she knew who shot Glaister Gopie." The court sustained defense counsel's objection to these comments as well. Undaunted by the court's ruling, the prosecutor again stated that Bolton "knew who shot Glaister [Gopie]."[3] Following the conclusion of the prosecutor's closing argument, defense counsel again made an oral motion for a mistrial based on the prosecutor's various closing comments. The court denied the motion but indicated that it would give the jury curative instructions related to the comments,[4] which it did

[3] Our review of the trial transcripts reveals four main references to Bolton, who did not testify at the trial. First, the police officer who first arrived at the scene of the shooting testified that Bolton was one of two people he interviewed there and that she did not see the shooting. Second, the defendant testified that he was visiting Bolton on the day of the shooting and that Bolton was his half-sister. Third, Mitchell, who was also at the scene of the shooting, testified that following the shooting "a girl, Crystal Bolton, came down and she was like, 'Oh, Glaister. Glaister,' and I went over to call [the victim's] mother." Mitchell further testified that when the police arrived, "Crystal was lying there with [the victim]." Finally, the victim testified that after he was shot, Bolton "came around the corner and [his friend] came around the corner."

[4] The trial transcript reveals in relevant part the substance of the court's ruling on the defendant's motion for a mistrial:

"The Court: While I agree that there were comments that I think were gratuitous and require some curative instruction, I don't feel that they rose to the level of misconduct that would deprive this defendant of a fair trial and . . . I'm going to deny the motion for a mistrial and while noting that, I'm also going to note that I intend to give some curative instruction to the jury and over the objections of the state who anticipates my remarks, they're going to be more than just general.

"One of them is going to focus on the comments that . . . the victim's arrest in New York was a minor matter because my . . . review of the evidence and testimony in this case indicates there was no indication one way or the other and I think that is one thing that while in some ways might be damaging in its facts, is going to be repeated and focused on. I think it has to be done in fairness to the defendant to remind the jury that their recollection controls, but the record doesn't indicate that there was any discussion about the nature of those offenses or crimes.

* * *

"In my opinion, [the prosecutor's remarks concerning Bolton] were totally inappropriate remarks . . . . They imply testimony of a person that never

accordingly.[5]

even took the stand and I think they have to be corrected . . . . I've given that serious consideration, and it wouldn't be the first time that a mistrial was entered in this court and in this district for this kind of behavior.

"I just don't think [the prosecutor's] conduct warranted [a mistrial]. I don't think it was appropriate either, so I'm going to try to do a balancing act here and cure what I consider to be inappropriate comments . . . . I'm not going to allow those comments to go uncommented on, either. I think that would deprive the defendant of a fair trial. I'm going to try and remedy what I think you did by way of error."

[5] The trial transcript discloses the court's instruction to the jury in relevant part:

"I'm going to remind you that you were told on an earlier occasion what evidence is. It's what comes out of this chair through witnesses.

"And what isn't evidence . . . are the comments and arguments of the attorneys, and a perfect example of that is what you hear the attorneys say to you in their closing arguments or their summations. That is not evidence. That's the attorneys' slant on what they feel the evidence produced or what it showed, and they have a right to summarize, but you have to remember, that's from their own perspective and to do it appropriately, they have to refer only to the evidence and testimony that [has] been offered through the witnesses.

"Now, in this particular case, in the closing argument, you may have heard comments that were made which were not testimony of the witnesses, and there were a couple of examples that I want to bring to your attention.

"There was a closing argument made that the victim had a matter in New York State, a prosecution or an arrest. While you may have heard in closing argument that it wasn't a major matter, it was a minor matter, the fact is there was no evidence or testimony . . . about that, just the fact of the arrest in New York. That's all you heard, and if that's your recollection, that's what you should recall, regardless of what counsel may have said.

"There was also a comment made about what a particular person at the scene of the crime may have done or seen, and that is Crystal Bolton. Crystal Bolton is not a witness in this case. There was testimony about what she was seen to do, for example, attend to the victim when he was on the ground, but there was no evidence or testimony about her personal thoughts or her observations or any knowledge that she might have had. It was a very dispatched testimony about what she was seen to be doing, so I want to bring to your attention that there was no testimony by Crystal Bolton in this case.

"Those are just examples of where the court would normally . . . say, 'Forget what the attorneys said. Remember what you heard.' And that's all I'm trying to do here. What they said, whether it was their opinions or their recollections, that doesn't control. Your recollections control . . . .

* * *

"The fact that a witness in this case—either state or defendant's witness—

Our review of the trial transcript reveals that the defendant asserts correctly that neither the severity of the victim's New York arrest nor the full extent of Bolton's actions in relation to the victim were explored. We are mindful, however, that "[s]crutiny of a challenged remark made during closing arguments to the jury . . . does not occur in a vacuum; an appellate court examines such remarks in light of the entire trial." (Internal quotation marks omitted.) *State* v. *Dillard*, 66 Conn. App. 238, 248, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001). Moreover, we recognize that "[i]f every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 360, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

Examining the prosecutor's remarks concerning the victim's arrest under the factors set out in part I of this opinion, we conclude that they were improper but were not substantially prejudicial to the defendant in the context of the trial as a whole. To a certain extent, the prosecutor's misconduct was invited by defense counsel's closing argument because defense counsel used the arrest to undermine the victim's credibility. As such, the severity of the misconduct was diluted, and we note that the remarks concerning the arrest were limited to two comments made at virtually the

---

may have admitted that he has been convicted of a crime is only admissible on the question of the credibility of the witness, that is, the weight you will give his testimony. A witness' criminal record or admission of facts of stealing or lying or cheating bears only on his credibility. It's your duty to determine whether this witness is to be believed wholly or partly or not at all. You may consider his prior conviction . . . and give such weight to those facts as you decide is fair and reasonable in determining the credibility of this witness."

same point in time. Further, while the victim's credibility was a critical issue in this case, the court adopted curative measures through its jury instruction strong enough to counter the misconduct appropriately, and we find no indication that the jury disregarded the court's instruction. See *State* v. *Rivera*, 61 Conn. App. 763, 773, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001). Further, considering the strength of the state's case, we cannot conclude that the remarks were substantially prejudicial to the defendant.

Similarly, although we are more disturbed and dismayed by the prosecutor's remarks concerning Bolton's actions, we conclude that they were not so prejudicial in the context of the entire trial as to deny the defendant due process and a fair trial. Mitchell testified that Bolton came around a corner and was in some way lying with the victim after the shooting. No testimony was offered, however, to support the prosecutor's comment that Bolton actually cradled the head of the victim as he lay bleeding on the ground. Because prosecutors, even with the generous latitude afforded to them during closing argument, may not appeal to the passions or prejudices of a jury, the prosecutor's remarks here were clearly improper. See *State* v. *Conde*, supra, 67 Conn. App. 501; *State* v. *Dillard*, supra, 66 Conn. App. 247. As a result, we are compelled to remind the prosecutor that "[w]hile the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider. . . . We have cautioned repeatedly that a prosecutor should avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence. . . .

"When presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates. [A] prosecutor is not an ordinary advocate. His [or her] duty is to see that justice is done and to refrain from improper methods calculated to produce prejudice and wrongful decisions by the jury." (Internal quotation marks omitted.) *State* v. *Dillard,* supra, 66 Conn. App. 247. The prosecutor here appeared ready to shelve this solemn duty in favor of lesser gains. Notwithstanding this criticism, the remarks concerning Bolton's actions occurred only during closing arguments and were not central to the critical issues in this case. Further, the court gave a curative instruction to the jury, and, again, in light of the strength of the state's case, we cannot conclude that the remarks infected the trial with such unfairness as to deprive the defendant of due process. The defendant has, therefore, failed to shoulder his burden of proving that the prosecutor's conduct, while improper, was substantially prejudicial.

The judgment is affirmed.

In this opinion the other judges concurred.