## STATE OF CONNECTICUT *v.* ALFONSO ROLLI
### (AC 17392)

Schaller, Hennessy and Dupont, Js.

Argued December 8, 1998—officially released May 11, 1999

*Katharine S. Goodbody,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Matthew Couloute, Jr.,* deputy assistant state's attorney, and, on the brief, *Robert G. Hall,* supervisory assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Alfonso Rolli, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a) and larceny in the fourth degree in violation of General Statutes § 53a-125 (a). The defendant claims that (1) there was insufficient evidence to prove that the value of the property taken exceeded $500 as required by § 53a-125 (a), (2) the trial court improperly admitted hearsay evidence and (3) the prosecutor violated the defendant's due process right to a fair trial during closing argument.[1] We affirm the judgment of conviction.

The jury reasonably could have found the following facts. Darrel Cheifetz stored two bicycles, one belonging to her husband and one belonging to her daughter, in the garage of the family home. On May 11, 1996, shortly before 10 a.m., Cheifetz observed the defendant in her driveway getting into a plain grey pickup truck with a black toolbox in the back and she observed that two bicycles from her garage were in the back of the pickup truck. Cheifetz ran after the pickup truck in an attempt to get the license number; the defendant, however, drove away in reverse.

Cheifetz' neighbor, Scott Silver, was driving out of his driveway at the time and observed the driver of the pickup truck. Cheifetz asked him to follow the pickup truck to get the license number. Silver followed the pickup truck and, using his car phone, reported the license plate number to the police.

---

[1] In addition, the defendant argues that the cumulative effect of the errors was harmful and requires that the judgment be set aside. Because, where appropriate, we consider the harmfulness of the alleged errors individually and conclude that they were not harmful, we need not address that claim. See *State* v. *Robinson*, 227 Conn. 711, 747, 631 A.2d 288 (1993) (court declined to create new constitutional claim in which totality of alleged constitutional errors is greater than sum of its parts).

The police traced the license plate number to the defendant's father. The police went to the father's residence and saw a grey pickup truck with a black toolbox in the back in the driveway. The license plate on the pickup truck had the number reported by Silver. The police did not see either of the bicycles in the truck. The defendant's father indicated that his son had borrowed the pickup truck on the morning of the theft and had used it between 9:30 and 10:30 a.m.

Silver made a photographic identification and an in-court identification of the defendant. Additional facts will be discussed where relevant to the issues on appeal.

I

The defendant first claims that the evidence was insufficient to show that the value of the property taken exceeded $500 and, therefore, he could not be convicted of larceny in the fourth degree pursuant to § 53a-125 (a).[2] Specifically, the defendant cites the definition of the value of property as it pertains to a charge of larceny as provided in General Statutes § 53a-121[3] and claims that the state failed to provide proof of the market value of the bicycles at the time of the crime or that the value was not ascertainable.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of

---

[2] General Statutes § 53a-125 (a) provides: "A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."

[3] General Statutes § 53a-121 (a) (1) provides in relevant part that "value means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime. . . ."

fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996)." (Internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 670, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 490, 698 A.2d 898 (1997).

Section 53a-125 (a) provides in relevant part: "A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property . . . exceeds five hundred dollars." "[V]alue means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime. . . ." General Statutes § 53a-121 (a) (1). The defendant argues that Cheifetz testified as to what she believed she may have paid for the bicycles but never testified as to the age or condition of the bicycles or anything else that could impact on their market value at the time of the crime. We disagree.

An owner of property is competent to testify as to its value. See *State* v. *McCarthy*, 197 Conn. 166, 172, 496 A.2d 190 (1985); *Shane* v. *Tabor*, 5 Conn. App. 363, 364, 497 A.2d 1047 (1985). Cheifetz, the owner of the bicycles, testified that the bicycle that she bought for her daughter was a regular woman's bicycle that was probably worth approximately $300 when purchased. She further testified that it was so new that on the day before the bicycles were stolen, she had purchased a service contract from the dealer. Cheifetz also testified that the bicycle that she bought for her husband was

a Morin twenty-one speed bicycle that cost approximately $400.

We note that "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Internal quotation marks omitted.) *State* v. *Sanchez*, 50 Conn. App. 145, 149–50, 718 A.2d 52, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998).

In this case, the jury reasonably could have inferred that the bicycle that Cheifetz bought for her daughter was new and worth $300. In addition, the jury reasonably could have inferred that the bicycle that she bought for her husband was not new and, therefore, not worth

$400; however, the jury could have reasonably inferred that the bicycle was worth more than $200.

We conclude, under the facts in this case, that it was not unreasonable for the jury to conclude that the market value of the stolen property exceeded $500. The evidence, therefore, was sufficient to sustain the verdict on the larceny charge.

## II

The defendant next claims that the trial court improperly admitted into evidence the officer's identification of the person to whom the license plate was registered. Specifically, the defendant argues that the statement, made by Detective John Calca of the Westport police department while testifying, that the license plate number was registered to the defendant's father was made to establish the truth of the facts contained in the statement and was based on a statement made by someone else in the police department and, thus, was inadmissible hearsay.

The state responds that the contents of a public record are admissible provided that the record is a public one made by an official who is legally required to keep such record in the course of his or her official duties and that the maker of the record had personal knowledge of the facts stated.[4] We agree with the defendant.

The following facts are necessary to the resolution of this issue. Calca testified that, on checking on the

[4] The state further argues that on the basis of the court's judicial experience, the trial court could infer that when Calca stated that the license number came back, he was indicating that he had obtained the name of the registered owner of the pickup truck from the records of the commissioner of motor vehicles. The state further argues that the records of the commissioner of motor vehicles are prepared by state officials in accordance with their statutory duty and based on their personal knowledge. We decline to accept the state's offer to incorporate a judicial experience inference into the public records exception to the rule against hearsay.

license plate number reported to him by Silver, the license number came back indicating that the vehicle was registered to the defendant's father, Angelo Rolli, of West Haven. The defendant objected to the introduction of that testimony on the ground that it was impermissible hearsay. The trial court overruled the objection.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Cole*, 50 Conn. App. 312, 330–31, 718 A.2d 457, cert. granted on other grounds, 247 Conn. 937, 722 A.2d 1217 (1998).

"An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998). In the present case, the evidence was offered by the state to show that the defendant's father was the owner of the pickup truck with the license plate number reported by Silver and to show further that the defendant had access to the vehicle. While the state could have offered a certified copy of the motor vehicle report indicating that the defendant's father was the owner of the pickup truck under the public records exception to the rule against hearsay, it did not do so. "A fact appearing in a public record cannot be proved by hearsay. *Gray* v. *Mossman*, 91 Conn. 430, 437, 99 A. 1062 [1917]; *Hogewoning* v. *Hogewoning*, 117 Conn. 264, 266, 167 A. 813 [1933]." *State ex rel. Capurso* v.

*Flis*, 144 Conn. 473, 482–83, 133 A.2d 901 (1957). In the present case, the state offered testimony from Calca indicating that, on checking on the license plate number reported to him by Silver, the license plate number came back indicating that the vehicle was registered to the defendant's father. We conclude that Calca's statement was hearsay and did not fall within the public records exception to the rule against hearsay and, therefore, the trial court abused its discretion in overruling the defendant's objection and admitting the statement in evidence.

That conclusion does not, however, end our analysis. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." *State* v. *Marshall*, 246 Conn. 799, 812, 717 A.2d 1224 (1998). "One factor to be considered in determining whether an improper ruling on evidence is a harmless error is whether the testimony was cumulative . . . ." (Internal quotation marks omitted.) *State* v. *Vega*, 48 Conn. App. 178, 192, 709 A.2d 28 (1998).

Calca testified that, on the basis of information he received regarding the registration of the pickup truck, he went to the house of the defendant's father and saw a grey pickup truck matching Silver's description in the driveway. He further testified that the license plate number on the pickup truck matched the license plate number reported by Silver and that he spoke with the defendant's father and the defendant. The defendant's father testified that his son, the defendant, had borrowed the pickup truck on the morning of the incident. He further testified that Silver identified the defendant from a photographic array as the person who was driving the pickup truck. Therefore, Calca's testimony that the license plate number came back as being registered to the defendant's father was cumulative of other properly admitted evidence establishing that the defendant's

father was the owner of the pickup truck and that the defendant borrowed the vehicle. Accordingly, we reject the defendant's claim that the trial court's admission of Calca's testimony was harmful.

## III

The defendant next claims that the prosecutor violated his due process right to a fair trial during closing argument by making an appeal to the passion of the jury and referring to facts outside of the record. The state responds that those issues were not preserved by the defendant and should not be reviewed by this court. The state further argues that the defendant cannot establish that the prosecutor's comments affected the fairness of the trial as a whole.

As a threshold matter, we must address the state's argument that the defendant's claims were not properly preserved. The defendant did not raise those claims at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Golding*, our Supreme Court "reformulated the standard announced in *State* v. *Evans*, [165 Conn. 61, 327 A.2d 576 (1973)], for appellate consideration of constitutional claims that were not preserved at trial. We stated that a 'defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' . . . *State* v. *Golding*, supra, [239–40]. We noted that we would remain free to dispose of the claim 'by focusing on whichever condition is most relevant in the particular

circumstances.' Id., 240." (Emphasis in original.) *State* v. *Watlington*, 216 Conn. 188, 192, 579 A.2d 490 (1990).

"[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout trial . . . .

"In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant. . . . In doing so, we have focused on several factors, [i]ncluded among those factors are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength

of the curative measures adopted; *United States* v. *Modica,* supra, 1181; *Harris* v. *United States,* 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer,* supra, 654; and the strength of the state's case. See *United States* v. *Modica,* supra, 1181; *State* v. *Couture,* supra, 564; see also *State* v. *Glenn,* 194 Conn. 483, 492, 481 A.2d 741 (1984). . . . *State* v. *Alexander,* 50 Conn. App. 242, 255–56, 718 A.2d 66, cert. granted on other grounds, 247 Conn. 927, 719 A.2d 1169 (1998).

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citation omitted; internal quotation marks omitted.) *State* v. *Chasse,* 51 Conn. App. 345, 356, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

A

The defendant first claims that the prosecutor improperly appealed to the passion, prejudice and emotion of the jury. Specifically, the defendant argues that the prosecutor invited the jurors to decide the case on the basis of their emotions and not on the evidence presented at trial. The defendant further argues that the prosecutor's statements "so infected the trial with unfairness as to [make] the resulting conviction a denial of due process."

The prosecutor stated in his closing argument that "the true issue here is, as a community and homeowners, as people who live here, how much are you going to put up with? When is [it] that people are going to be able to come into your house, which you've worked for, which your family provides, and take something

from you? Whether it be a pack of gum, whether it be your children's toys, whether it be a bicycle, whether it be your most valued possession, it is wrong for that person to do that, and he should be punished."

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . Consequently, the state must avoid arguments that are calculated to influence the passions or prejudices of the jurors because they have the effect of diverting the jurors' attention from their duty to decide the case on the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 364.

After a review of the record, we conclude that the alleged misconduct did not rise to the level of substantial prejudice. Despite the facts that the remarks of the prosecutor were not invited by any conduct of the defendant and no curative instruction was given by the court specifically directed at the remarks contained in the prosecutor's argument, the remarks were restricted to one portion of the prosecutor's final argument and not repeated throughout the trial. The state presented a strong case. A witness identified the defendant as the perpetrator of the theft, and the pickup truck used in the larceny was described by two witnesses and was traced to the defendant. Although we strongly disapprove of the prosecutor's remarks in the final argument, we conclude that after viewing the remarks in the context of the entire record, the remarks did not rise to the level of egregious misconduct that so infected the trial with unfairness that the defendant was denied his constitutional right to a fair trial.

B

The defendant next claims that the prosecutor improperly referred to facts outside the evidence. Specifically, the defendant argues that the prosecutor commented on the length of time that it would take for the

defendant to drive to Westport from his father's house in West Haven, steal the bicycles and drive back to West Haven when there was no evidence in the record establishing a time frame.

The defendant's father testified that the defendant used his pickup truck on the morning of the incident from approximately 9:30 to 10:30 a.m. In closing argument, the prosecutor stated that "we all have common sense and we all know that going on [Interstate] 95 which we've all traveled that you can get from Westport to New Haven in half an hour, some of us probably make it in ten minutes when we were in a rush." The defendant argues that there was no testimony as to the amount of time it would take to travel from Westport to New Haven on Interstate 95, and, therefore, the prosecutor argued facts not in evidence.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument. . . . It does not follow from this, however, that every remark not confined to the record is improper." (Citations omitted, internal quotation marks omitted,) Id., 359–60. "In deciding cases, however, [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to a jury's common sense in closing remarks." (Citation omitted; internal quotation marks omitted.) Id., 361.

In this case, the prosecutor appealed to the jurors to draw inferences based on their own experience and common knowledge regarding driving time on Interstate 95. We conclude that the prosecutor's remarks

were not improper and, therefore, did not deprive the defendant of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.