STATE OF CONNECTICUT *v.* KEVIN J. WICKES
(AC 21555)

Spear, Mihalakos and Dupont, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Spear, Mihalakos and Dupont. Although Judge Spear agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that rather than rearguing the appeal to this court with a panel consisting of the original two judges and an additional judge, they would permit the remaining two judges alone to render a written decision.

Argued April 23—officially released September 17, 2002

*Richard S. Cramer,* for the appellant (defendant).

*Paul E. Murray,* state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

DUPONT, J. The defendant, Kevin J. Wickes, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit larceny in the first degree in violation of General Statutes §§ 53a-49 and 53a-122, and attempt to commit insurance fraud in violation of General Statutes §§ 53a-49 and 53a-215. The sole issue on appeal is whether certain remarks made by the prosecutor in his closing and rebuttal arguments to the jury amounted to prosecutorial misconduct that denied the defendant a fair trial. We conclude that the defendant was not denied a fair trial and, therefore, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 30, 1997, the defendant, a Groton city police officer[2] was working the day shift. Later in the afternoon, he informed his wife, Dara Wickes, that he would not be home at his normal time because he was working an overtime shift but that maybe the two could meet for dinner. At approximately 4:30 p.m., the defendant spoke with Dara Wickes and asked her to meet him at the Streeter boat launch in Groton. She agreed, believing they were meeting for dinner, and arrived there to meet the defendant sometime between 6 p.m. and 6:30 p.m.

Dara Wickes, who was driving the defendant's minivan, stopped next to his police cruiser, which was on the ramp facing the water. The defendant grabbed her, pushed her into the back of his police cruiser and told

---

[2] There are three police departments within Groton: The Groton city police department, where the defendant was employed, the Groton town police department, which conducted the investigation in this case, and Groton Long Point, which is not involved in this case.

her to remain there. The defendant then opened all of the windows and the rear hatch of the minivan. Thereafter, he used a rubber hammer, to break off the key from the ignition, causing cosmetic damage to the steering column. The defendant pushed the minivan[3] down the ramp into the water. As the defendant and Dara Wickes drove away from the boat launch, he threw the broken piece of the ignition key into a grassy area.

The defendant drove to a nearby shopping center where Dara Wickes got out of the vehicle. He told her to call 911 and to report the minivan stolen, and he threatened her when she refused to do so. The defendant left and Dara Wickes went into the shopping center. At 7:23 p.m. Dara Wickes called the Groton city police station to speak with the defendant. Former Sergeant Robert Giesing, the desk officer, informed her that the defendant was not there. After shopping in a grocery store, at 7:40 p.m. she again telephoned the police station and asked for the defendant. Giesing informed her that the defendant was not there.

Dara Wickes then called the Groton town police to report that the minivan had been stolen. At approximately 7:50 p.m., Officer Paul Reams of the Groton town police was dispatched to the scene. At 7:51 p.m., the dispatch officer telephoned Groton city police and spoke with Giesing. Giesing transmitted a message to the defendant over the police computer network,[4] telling him to call the Groton town police station. The defendant, who was at the Mystic Icehouse speaking with Officers William Wagner and Michael Vanover of

---

[3] The minivan was a 1995 Chrysler Town and Country model. In 1997, the time of the offenses, it was insured under a policy with the Liberty Mutual Insurance Company and was wholly owned by the defendant. Its retail value at that time was $19,300.

[4] Groton city police officers each have in their police vehicles a mobile data terminal, which is a laptop computer that is networked to the police station and to other law enforcement vehicles.

the Groton city police, used a pay telephone to call the Groton town police department. Thereafter, at 7:55 p.m. the defendant requested permission from Giesing to go to the shopping center where the car allegedly had been stolen.

The defendant spoke with the responding officer, Reams, and then told Dara Wickes to call the Liberty Mutual Insurance Company when she got home. Thereafter, the defendant returned to duty, and Groton town police officers transported Dara Wickes home. A short time later, the defendant returned to the police station and got permission from Giesing to call his insurance company to report the theft of his minivan. At 9:15 p.m., the defendant called the insurance company and spoke with its claims center.

The minivan was found on December 4, 1997, in the Thames River off the shore of the Streeter boat launch. Following its retrieval from the river, the Groton town police began an investigation into the circumstances surrounding its alleged theft and disposal into the river. The investigation revealed that the minivan had not been broken into or started by "popping" the ignition. There only was cosmetic damage to the ignition, in which the broken key was found. That evidence and further investigation led to the conclusion that the vehicle had not been stolen. Additional facts will be set forth as necessary.

I

REVIEWABILITY

The defendant did not properly preserve his claim of prosecutorial misconduct at trial[5] and therefore requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "The first two *Golding*

[5] The defendant did not object to the comments of the prosecutor at trial and did not seek a curative instruction from the court.

requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 70 Conn. App. 29, 32, 797 A.2d 1 (2002). We conclude that the record is adequate for review and that the claim of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude, and, therefore, we will consider whether the alleged constitutional violation clearly exists and whether it denied the defendant a fair trial. See *State* v. *Jefferson*, 67 Conn. App. 249, 266, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

In evaluating a prosecutorial misconduct claim, we review whether the record discloses a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. See *State* v. *Dudley*, 68 Conn. App. 405, 409–10, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002). A statement within closing argument is blatantly egregious as to implicate the fundamental fairness of the trial itself where "in light of all of the facts and circumstances . . . no curative instruction could reasonably be expected to remove [its] prejudicial impact." (Internal quotation marks omitted.) *State* v. *Ancona*, 69 Conn. App. 29, 37, 797 A.2d 1138, cert. granted on other grounds, 260 Conn. 928, 798 A.2d 970 (2002). In reviewing a claim of prosecutorial misconduct during closing argument, "we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) Id.

To determine whether prosecutorial conduct amounts to a denial of due process, we evaluate whether the conduct was improper and, if so, whether the conduct caused substantial prejudice to the defen-

dant. *State* v. *Thompson*, 69 Conn. App. 299, 304, 797 A.2d 539, cert. granted on other grounds, 260 Conn. 936, 802 A.2d 90 (2002). In that analysis, "[w]e do not focus alone . . . on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) Id.[6]

In our analysis, however, we also are mindful of the long recognized "special role played by the state's attorney in a criminal trial. He is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 70 Conn. App. 33.

The defendant presents for review eight allegedly improper comments by the prosecutor. With regard to each comment, he claims that the prosecutor improp-

---

[6] Unlike *State* v. *Thompson*, supra, 69 Conn. App. 299, and the present case, a recent case involving a claim of prosecutorial misconduct, *State* v. *Payne*, 260 Conn. 446, 450, 797 A.2d 1088 (2002), was decided pursuant to the reviewing court's supervisory powers, rather than under due process analysis. *Payne* focused on the culpability of the particular prosecutor on the basis of a pattern of conduct in other cases as well as in the case being reviewed.

erly (1) expressed his personal opinion as to the credibility of witnesses, (2) argued facts that were not in evidence or (3) gave a personal evaluation of the evidence. We first will consider each claim of impropriety separately to determine whether any of the comments were improper and, if so, second, we will determine whether, in light of the entire trial, the conduct caused substantial prejudice to the defendant, thereby requiring a new trial.

## II

### EXPRESSION OF PERSONAL OPINION ON THE CREDIBILITY OF WITNESSES

The defendant argues that in four instances, the prosecutor improperly expressed his personal belief as to the credibility of a witness.

"[I]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact. . . . The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citation omitted; internal quotation marks omitted.) Id.

As the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, something must be allowed for the zeal of counsel in the heat of the argument. *State* v. *Singh*, 259 Conn. 693, 712, 793 A.2d 226 (2002). "The mere use of phrases such as I submit, I find, or I believe does not constitute

improper argument." (Internal quotation marks omitted.) *State* v. *Dudley*, supra, 68 Conn. App. 415; *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 400, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). "[U]se of the personal pronoun 'I' is a normal and ordinary use of the English language. If courts were to ban the use of it, prosecutors would indulge in even more legalese than the average lawyer, sounding even more stilted and unnatural." (Internal quotation marks omitted.) *State* v. *Dillard*, 66 Conn. App. 238, 260–61, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001).

Further, although a prosecutor may not interject personal opinion about the credibility or truthfulness of a witness, he may comment on the credibility of the witness as long as the comment reflects reasonable inferences from the evidence adduced at trial. *State* v. *Dudley*, supra, 68 Conn. App. 415.

In other words, "[i]t is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." *State* v. *Jeudis*, 62 Conn. App. 787, 794, 772 A.2d 715, cert. denied, 256 Conn. 923, 774 A.2d 140 (2001). Thus, it has been noted that "even though it is unprofessional, a prosecutor can argue that a defendant is a 'liar' if such an argument is supported by the evidence." *State* v. *Spyke*, 68 Conn. App. 97, 113, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002); see also *State* v. *Oehman*, 212 Conn. 325, 334, 562 A.2d 493 (1989) (prosecutor's characterization of defendant as liar supported by evidence).

## A

In the first instance of an allegedly improper comment as to credibility that occurred during the prosecutor's closing argument to the jury, the prosecutor stated,

"I submit no credibility whatsoever to [the defendant's] testimony that he talked to [Dara Wickes] about [paying off the credit card bills]."

In context, the statement referred to the discrepancies in the testimony of the defendant and Dara Wickes. Dara Wickes testified that the defendant never spoke with her about what they would do with the insurance proceeds received from the insurer of the minivan. She testified, and there was physical evidence showing, that the defendant, on his own, had written three checks totaling $13,800 to pay off his credit card bills[7] on the night that he reported to the insurance company that the minivan had been stolen. There also was evidence presented that the account from which the checks were drawn did not have sufficient funds to pay the checks. When the defendant testified, he claimed that he had spoken to Dara Wickes about what they were going to do with the insurance proceeds and that they had decided to pay off his credit card bills. In an attempt to explain why he had written the checks without the money to cover them, he testified that it was his practice to write checks as soon as payments become due and then, when he had sufficient funds, he would mail the checks.

The prosecutor's statement was not a personal expression of his opinion as to the credibility of the defendant. Credibility was a critical issue in the case. The prosecutor merely was arguing that the evidence showed that the defendant's testimony was not credible. He used the words "I submit" followed by a detailed account of the evidence that the jury could use in determining whether the defendant was credible. The prosecutor based his statement solely on the evidence presented. We conclude, therefore, that his statement was proper argument.

---

[7] Dara Wickes testified that the credit card debt was from the defendant's previous marriage.

B

The second comment from the state's closing argument that the defendant claims was improper related to the testimony of Giesing. The prosecutor stated, "I would submit to you that there is no credibility whatsoever to be given to the testimony of former Sergeant Giesing."

The comment related to Giesing's testimony regarding the whereabouts of the defendant on the evening that he allegedly drove his minivan into the water and reported to the insurance company that it had been stolen. Giesing testified that the defendant had relieved him as the desk officer in the police station at approximately 6 p.m. Giesing also stated that the defendant remained at the desk until Giesing returned at approximately 6:45 p.m.

In contrast, the state presented evidence that it was Officer Donald Comstock who relieved Giesing at the desk and not the defendant. Comstock testified that he was at the desk on the evening of November 30, 1997, from approximately 6:15 p.m. to 6:45 p.m. and that he did not see the defendant in the police station. The state further substantiated Comstock's testimony by presenting tapes that were made from the recordings of the desk telephone and the transcriptions of those tapes. The tapes and transcripts showed that Comstock answered all of the telephone calls received at the desk between 6:15 p.m. and 6:45 p.m.

That contradictory evidence made Giesing's credibility an issue for consideration. The prosecutor argued, therefore, that the evidence showed that Giesing was not credible. His statement directly related to, and was prefaced and followed by, discussion of the evidence regarding Giesing's credibility. Giesing was a close personal friend of the defendant. He did not come forward with his statement regarding the defendant's where-

abouts until nearly one year after the defendant's arrest and more than one and one-half years after the incident. Giesing also wrote a statement after having reviewed the entire case file and having spoken with the defendant and his attorney. He could not explain inconsistencies between the radio transmissions and his testimony. After discussing that evidence, the prosecutor presented to the jury the reasonable inference that Giesing had not testified truthfully.

That was not a personal expression of the prosecutor's opinion of Giesing's credibility; it was a reasonable inference that the jury could draw from the evidence. The statement did not imply that it was based on evidence outside the record. The facts and evidence clearly presented an issue of credibility, which the prosecutor properly argued to the jury. His statement was, therefore, not improper.

C

The last comment from the prosecutor's closing argument that the defendant claims improperly expressed the prosecutor's personal opinion was essentially a reiteration of the previous remarks that were made in the summation of the argument. In reference to the discrepancies between the state's evidence and the testimony of the defendant and Giesing, the prosecutor stated: "I submit to you that there's no credibility whatsoever to believe the testimony of [the defendant] or Giesing."

As previously stated, the credibility of the witnesses was a central issue. The jury was presented with two differing accounts of the events on November 30, 1997. One version, offered by the state, was that the defendant drove his minivan into the Thames River off the Streeter boat launch and reported it stolen to collect the insurance proceeds because of his financial difficulties and his inability to sell the minivan for what it was worth. The second version, offered by the defendant, was that

he had nothing to do with the minivan's disappearance and that he was at the Groton city police station the entire time that the minivan allegedly was put into the river.

The prosecutor's comment concerning the credibility of the defendant and Giesing occurred in the summation of the closing argument. It was not an expression of the prosecutor's personal opinion, and there was no implication that the comment was based on anything outside the record. The prosecutor argued from the evidence that it reasonably could be inferred that the defendant and Giesing had not been truthful in their testimony.

## D

The final comment that the defendant claims was an improper expression of the prosecutor's personal opinion as to credibility occurred during the prosecutor's rebuttal argument. In reference to the credibility of Giesing, the prosecutor argued, "I don't lightly accuse him of lying. But I do accuse him of lying." Preceding and following the statement, the prosecutor discussed the evidence that would lead to that conclusion.

That statement is in stark contrast to the previously discussed comments regarding Giesing's and the defendant's credibility. The comments previously discussed were not a personal opinion, but a suggested inference that could be drawn from the evidence as discussed by the prosecutor. That type of argument is permissible. In contrast, the statement accusing Giesing of having lied was a blatant expression of the prosecutor's personal opinion as to Giesing's credibility. The prosecutor did not "submit" his statement to the jury for its consideration; he personalized the argument by stating, "I don't lightly accuse him of lying." That statement therefore was improper.

## III

### ARGUING FACTS NOT IN EVIDENCE

The defendant argues that the prosecutor on three separate occasions in his rebuttal argument referred to facts that were not in evidence.

"[W]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 70 Conn. App. 42. "Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument. . . . It does not follow from this, however, that every remark not confined to the record is improper." (Internal quotation marks omitted.) *State* v. *Rolli*, 53 Conn. App. 269, 281, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999). "[T]he privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered . . . ." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 42. Consequently, "[t]he state may . . . properly respond to inferences raised by the defendant's closing argument." Id.

Additionally, "[j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to a jury's common sense in closing remarks." (Internal quotation marks omitted.) *State* v. *Rolli*, supra, 53 Conn. App. 281.

### A

The first statement that the defendant argues was not based on the record was part of the prosecutor's response to the defendant's statement in his closing

argument that Dara Wickes had lied in testifying that she did not remember a message she left on the defendant's answering machine.[8] The prosecutor, in his rebuttal argument, countered by offering the alternative explanation that rather than lying about not remembering, she actually did not remember the specific conversation because there had been numerous heated conversations during the pendency of the couple's divorce proceedings. The prosecutor stated, "I'm sure that there probably have been conversations of a less than civil nature over a long period of time."

The prosecutor's argument with respect to the nature of the relationship between Dara Wickes and the defendant and the "less than civil" conversations they may have had was amply supported by the facts in evidence and the reasonable inferences to be drawn therefrom. Dara Wickes testified that she had filed for divorce on three occasions and had obtained accompanying restraining orders in each case. She further testified that she and the defendant had had a stormy relationship and that she had at times during the relationship said some things that were not "pleasant and cheerful," but, in fact, were "angry." Additionally, Stacie Moore testified that the two were going through a "bitter divorce." Finally, William Lee, a defense witness, testified that the defendant and Dara Wickes did not have a good relationship and did not talk much, but that when they did, it was "bickering back and forth."

That evidence and the reasonable inferences that could be drawn therefrom clearly support the prosecutor's statement, "I'm sure that there probably have been conversations of a less than civil nature over a long period of time." Additionally, that statement appealed

---

[8] In the message, she stated, "I may have been arrested for shoplifting, but it wasn't my van. My charges have been dismissed. I'm going to bury you on the [witness] stand. Can't wait for trial."

to the common sense of the jury. There was no question that the defendant and Dara Wickes were going through a bitter divorce, and common sense would lead one to believe that in such a case, the divorcing parties did not always speak civilly to each other. Further, in arguing that Dara Wickes had lied about not remembering the telephone call, the defendant invited an explanation from the prosecutor. The prosecutor's comment relating to the nature and number of previous conversations between the defendant and Dara Wickes, therefore, was not improper.

## B

The second statement that the defendant claims was not based on the facts in evidence was in response to the defendant's argument that he did not have a motive and that the state had not proven motive. In explaining the defendant's motive, the prosecutor stated in his rebuttal argument that the defendant was paying a 22.4 percent interest rate on a credit card debt. The prosecutor then stated: "That's pretty high." The defendant objects to that statement on the ground that it lacked any supporting evidence.

That remark appeals to the jury's common sense and everyday experience. In addition, the defendant himself testified that he was planning on using the insurance proceeds to pay off his credit card debt and to purchase a new car on a separate loan that would have been at a "much lower rate." The prosecutor's statement regarding the defendant's credit card interest rate properly appealed to the common sense of the jury, was amply based in the evidence and was, therefore, proper argument.

## C

The third statement, which the defendant argues was improper because it was based on facts that were not

in evidence, related to the defendant's claim that the minivan actually had been stolen. The prosecutor stated in his rebuttal argument: "Now, who steals a minivan? There aren't a whole lot of them. I would submit it's not your big target for car thieves . . . ."[9] The defendant argues that there was no evidence as to the rate at which minivans are stolen and, therefore, the statement was improper because it related to facts that were not in evidence.

The state argues that the comment was rhetorical in nature and appealed to the common sense of the jury. "[W]hen a prosecutor suggests a fact not in evidence, [however] there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury." *State* v. *Singh*, supra, 259 Conn. 718. Although the statement may have been rhetorical in nature, rather than appealing to the common sense of the jurors, it asked them to speculate as to things that are not part of one's everyday experiences. Thus, because there was no evidence as to the rate at which minivans are stolen, the number of people who steal minivans or the number of minivans available for people to steal, the prosecutor's comment was improper.

IV

PERSONAL EVALUATION OF THE EVIDENCE

The next statement the defendant argues is improper also occurred in the prosecution's rebuttal argument. The prosecutor stated, "I think there is plenty of motive here." Regarding that statement, the defendant fails to articulate specifically any reason as to why the statement was improper. To the extent that the defendant argues that the statement was a personal evaluation of

---

[9] It is unclear whether the prosecutor's use of the word "them" refers to the people who steal minivans or to the number of minivans available to be stolen.

the evidence, in context, it was not, and therefore, it was not improper.

The prosecutor's single statement of personal evaluation was in direct response to the defendant's closing argument, in which the defendant argued that there absolutely was no motive for him to commit the crimes charged, and, further, incorrectly, that the state had to prove motive beyond a reasonable doubt. The prosecutor responded first by commenting properly on the evidence and how it showed motive. He went on to state, "I think there's plenty of motive here." When viewed in the context of rebutting the defendant's statements, the prosecutor's comment was not improper, given the latitude afforded counsel in argument. See *State* v. *Payne*, 260 Conn. 446, 452, 797 A.2d 1088 (2002).

V

DUE PROCESS FACTORS

Having concluded that two of the prosecutor's statements were improper, it is next necessary to consider whether, viewed in context of the entire trial, they caused substantial prejudice to the defendant.

"[W]e must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 298, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this

court . . . has focused on several factors. . . . Those factors include (1) the extent to which the misconduct was invited by defense conduct or argument, (2) the severity of the misconduct, (3) the frequency of the misconduct, (4) the centrality of the misconduct to the critical issues in the case, (5) the strength of the curative measures adopted and (6) the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevenson,* supra, 70 Conn. App. 34.

## A

In the first improper statement during the prosecutor's rebuttal argument, the prosecutor directly and personally commented on the lack of credibility of a key defense witness. Considering each of the relevant six factors, and in view of the defendant's closing argument and the surrounding circumstances of the entire trial, we conclude that the prosecutor's statement was not so prejudicial as to deny the defendant a fair trial.

First, the prosecutor was responding to the argument of defense counsel, which incorrectly suggested that the prosecutor had to (1) prove motive beyond a reasonable doubt, (2) show that defense witnesses were lying beyond a reasonable doubt, (3) show that prosecution witnesses were truthful beyond a reasonable doubt and (4) explain all of the physical evidence beyond a reasonable doubt. Defense counsel further and extensively argued that Dara Wickes, a key prosecution witness, was lying. Defense counsel also vouched for the credibility of Giesing when he stated that "[h]e has devoted his life to law enforcement. He's probably still in law enforcement, too. Do you think he is going to come in willy-nilly and perjure himself? That is a—is a stretch. People don't just do that. You have to be a special type of person to be able to come into court and just lie like that." Therefore, the prosecutor's comments were

invited by defense counsel's argument. See *State* v. *Dillard*, supra, 66 Conn. App. 256.

Further, although the prosecutor's comment was improper, its severity was lessened by its context. Before and after accusing Giesing of lying, the prosecutor explained his basis in the evidence for the accusation. See *State* v. *Spyke*, supra, 68 Conn. App. 113 ("even though it is unprofessional, a prosecutor can argue that a defendant is a 'liar' if such an argument is supported by the evidence"). Additionally, the defendant's failure to object is some indication that the comment was not so prejudicial so as to deny him his right to a fair trial. See *State* v. *Dillard*, supra, 66 Conn. App. 249 (" 'failure to object to certain arguments at trial often is an indication that counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized' ").

Moreover, the prosecutor's improper statement occurred only once in the course of his rebuttal argument and, therefore, was not part of a pattern of misconduct. Although prosecutorial misconduct can occur in the course of closing argument alone, that single improper comment, which was "made only during closing argument demonstrates that such [comment was] not a pervasive quality of the entire proceeding." (Internal quotation marks omitted.) *State* v. *Smith*, 65 Conn. App. 126, 140 782 A.2d 175, cert. granted on other grounds, 258 Conn. 930, 783 A.2d 1032 (2001).

Another factor to consider is the strength of the court's curative instruction. The court gave the jury a lengthy instruction on how to evaluate the credibility of witnesses. The court also reminded the jury that statements and arguments by counsel were not evidence. The prosecutor's single comment about a witness' lack of credibility was not egregious enough such

that the court's instruction could not have cured the impropriety.

Another factor weighing against ordering a new trial is the strength of the state's case. The verdict demonstrates that the jury found the state's case particularly strong. There never was any dispute that the defendant called the insurance company and tried to collect on his "stolen" minivan. The only issue in the case was whether the defendant had put the minivan into the river. To demonstrate that the defendant indeed had put the minivan into the river and that it had not been stolen, the state presented two key witnesses. First, the state presented eyewitness testimony from Dara Wickes that the defendant broke a key off in the ignition and pushed the minivan into the water. Although testimony by the defendant and Giesing contradicted that of Dara Wickes, the jury found the defendant guilty, which demonstrates that it found Dara Wickes' testimony credible. Second, the state presented testimony from Officer Comstock that he was acting as the desk officer at the police station and had not seen the defendant during the time that the defendant claimed to have been there on November 30, 1997. That testimony was supported by audiotapes and transcripts evidencing that Comstock had answered all of the calls to the desk when the defendant claimed to be there. The state also offered motive evidence from the defendant himself, indicating that he was going to use the insurance proceeds to pay off his high interest credit card debt and to finance the purchase of a new car at a lower rate. Therefore, the state's case was particularly strong because it was based on credible eyewitness testimony, a discernable motive and evidence discrediting the defendant's theory of the case.

The final factor in our analysis, the centrality of the prosecutor's comment to the critical issue in the case, weighs in favor of granting a new trial. Credibility was

a central issue. Specifically, the credibility of the defendant, Dara Wickes and Giesing. Thus, the defendant argued that Dara Wickes, a state's witness, was lying and that the prosecutor improperly had accused Giesing, a defense witness, of lying. Having evaluated and balanced each of the factors, however, that factor alone cannot be a basis for finding that the defendant was substantially prejudiced.

B

The second improper statement related to the number of minivans available to be stolen or to the number of people who steal minivans.[10] Presumably, the statement was offered to rebut the defendant's theory of the case, which was that the minivan had been stolen.

Although the prosecutor's comment indeed was improper, we cannot conclude that it was part of a pattern of misconduct or so egregious such that it substantially prejudiced the defendant's right to a fair trial. It related only minimally to the critical issue of the case, credibility, it merely was an attempt to appeal to the jury's common sense in the form of a rhetorical question and, therefore, it was not intentional. But see *State* v. *Payne*, supra, 260 Conn. 458 (" 'remarks deliberately intended to undermine the rulings of the trial court to the prejudice of the defendant . . . [are] so offensive to the sound administration of justice that only a new trial can effectively prevent such assaults on the integrity of the tribunal' "). Consequently, even though the comment was improper because it was based on facts outside the evidence, we cannot conclude that it denied the defendant his right to a fair trial.

Therefore, although the prosecutor made two improper comments in the course of his rebuttal argument, those comments alone were not such to affect

[10] See footnote 9.

the entire proceeding, and the defendant was not denied his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.